IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WELLS FARGO BANK, N.A., a national banking association,<br><br>                      Plaintiff,<br><br>v.<br><br>M.T.G. PROPERTIES, L.L.C., a limited liability company, M.T.G. HOLDINGS, INC., a corporation, HEALTH ESSENTIAL NUTRITION, INC., a corporation and MARJORIE T. CARTER, an individual,<br><br>                      Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:14-CV-570 TS<br><br>District Judge Ted Stewart |

       This matter is before the Court on Plaintiff's Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

I.  BACKGROUND

       On November 6, 2006, M.T.G Properties, L.L.C ("MTG") executed a Promissory Note (the "Note") in which MTG agreed to repay a $993,750.00 loan made by Wells Fargo. The Note was secured by real property located at 2746 East 850 North, St. George, Utah 84790 (the "Property") pursuant to a Deed of Trust.

       On November 27, 2007, Marjorie T. Carter ("Carter") and Health Essentials Nutrition, Inc. ("Health Essentials") executed Commercial Guaranties in favor of Wells Fargo and on December 6, 2010, M.T.G. Holdings, Inc. ("Holdings") also executed a Commercial Guaranty in favor of Wells Fargo. Pursuant to the Guaranties, Carter, Heath Essentials, and Holdings

1

absolutely and unconditionally guaranteed payment of all amounts owed by MTG to Wells Fargo.

In addition, MTG had a Wells Fargo Business Platinum Card. Carter and her husband were each issued a card on MTG's account. MTG agreed to abide by the terms and conditions for using the card. Under the terms and conditions, Carter promised to pay Wells Fargo all indebtedness of MTG arising under or related to the terms and conditions.

Defendants defaulted on their monthly payments on the Note. Additionally, MTG and Carter failed to make payments to Wells Fargo under the credit card terms and conditions. Wells Fargo has made a demand for payment.

On or about March 13, 2014, Wells Fargo obtained an appraisal of the Property. The appraiser determined that the "as is" value of the Property as of March 10, 2014, was $720,000. On May 21, 2014, the Trustee under the Deed of Trust sold the Property at a foreclosure sale. At the sale, no bids were offered except for Plaintiff's credit bid for the Property in the amount of $648,000.

Plaintiff seeks damages on the Note in the amount of $331,742.29, plus after accruing interest, attorneys' fees, and costs. Plaintiff seeks damages on the credit cards in the amount of $22,151.42, plus after accruing interest, attorneys' fees, and costs.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] The movant, asserting there is no genuine dispute about material facts, must support its assertion "by . . .

---

[1] Fed. R. Civ. P. 56(a).

citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that . . . an adverse party cannot produce admissible evidence to support the fact."[2]

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element."[3] The nonmovant must "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nomovant."[4]

In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[5] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[6]

---

[2] Fed. R. Civ. P. 56(c).

[3] *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).

[4] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (quotation omitted).

[5] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[6] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

III.  DISCUSSION

Plaintiff asserts claims for breach of contract.[7]  Under Utah law, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[8]

The parties do not dispute the existence of a contract, performance by Plaintiff, and a breach by Defendants.  Rather, the only issue here is damages and, more specifically, the amount of damages.  Defendants dispute the amounts owed under the agreements.  The Court will discuss each agreement in turn.

A.  THE NOTE

Under the Note, Plaintiff seeks compensation for the principal, interest, late charges, appraisal costs, environmental report costs, title report, attorneys' fees and costs, and property taxes, less the appraised value, for a total of $331,742.29.

Utah's deficiency judgment statute provides:

> At any time within three months after any sale of property under a trust deed . . . an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in that action the complaint shall set forth the entire amount of the indebtedness that was secured by the trust deed, the amount for which the property was sold, and the fair market value of the property at the date of sale.  Before rendering judgment, the court shall find the fair market value of the property at the date of sale.  The court may not render judgment for more than the amount by which the amount of the indebtedness with interest, costs, and expenses of sale, including trustee's and attorney's fees, exceeds the fair market value of the property as of the date of the sale.  In any action brought under this section, the prevailing party shall be entitled to collect its costs and reasonable attorney fees incurred.[9]

---

[7] Plaintiff appears to have abandoned its alternative claim for unjust enrichment.

[8] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

[9] Utah Code Ann. § 57-1-32.

4

"The statute . . . directs the court to ascertain the balance due by using a two-step process: (1) determine the remaining total indebtedness and the fair market value of the trust deed property; and (2) subtract the fair market value of the trust deed property from the total indebtedness."[10] "The amount that remains, if any, is the balance due."[11]

Plaintiff argues that the fair market value of the Property did not exceed $720,000 as of the date of the sale. In support, Plaintiff relies on the appraisal it obtained three months in advance of the foreclosure sale, which appraised the property at $720,000.

Defendants dispute the fair market value of the property did not exceed $720,000. In support, Defendants have provided the Declaration of Marjorie Carter. Mrs. Carter states that Reed Dixon, the Wells Fargo loan officer in charge of the loan, stated in July 2012 that Plaintiff had received an appraisal of the Property that valued the property at $890,000. An email sent by Mr. Dixon provides support for this statement.

Mrs. Carter also states that in July or August 2013, Wells Fargo vice president Paul Lathrop told her that Plaintiff had appraised the property at $860,000 to $870,000. Finally, Mrs. Carter opines that the fair market value at the date of the foreclosure sale was at least $1,000,000. Mrs. Carter bases this opinion on her "experience as the owner of three commercial properties in Washington County, Utah, my understanding of the market values of commercial properties in Washington County, Utah, and Mr. Dixon's and Mr. Lathrop's statements to me regarding the appraisals of the Property."[12]

---

[10] *First Sw. Fin. Servs. v. Sessions*, 875 P.2d 553, 555 (Utah 1994).

[11] *Id.*

[12] Docket No. 23, Decl. of Marjorie Carter, ¶ 7.

Having carefully considered the evidence presented, the Court finds that Defendants have failed to raise a genuine dispute of material fact sufficient to withstand summary judgment. Mr. Dixon's statements concern an appraisal that was conducted in July 2012. This appraisal provides little information as to the fair market value of the property as of the date of the foreclosure sale, which occurred in May 2014. The only competent evidence on that issue is the appraisal commissioned by Plaintiff three months earlier.

The statement allegedly made by Mr. Lathrop is equally unavailing. Mrs. Carter states that in July or August 2013, Wells Fargo vice president Paul Lathrop told her that Plaintiff had appraised the property at $860,000 to $870,000. It is unclear from Mrs. Carter's statement whether a second appraisal was conducted in July or August 2013, or if Mr. Lathrop made the statement to her in July or August 2013. Regardless, this statement suffers from the same deficiency as Mr. Dixon's statement as it does not speak to the value of the Property at the time of the sale. Moreover, this statement provides additional support for the value found in the appraisal, as it shows a decline in the value of the property from July 2012 to July/August 2013.

Finally, Mrs. Carter's opinion concerning the value of the Property is insufficient to withstand summary judgment. Mrs. Carter opines that the Property had a fair market value of at least $1,000,000. However, Mrs. Carter has not been designated as an expert in property valuation and there is no evidence to support her opinion. This statement is merely a conclusory, self-serving statement that is completely devoid of any evidentiary support. Such statements do not present a genuine dispute of material fact.[13] Therefore, the only evidence before the Court

---

[13] *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (stating the affidavits of a party opposing summary judgment "must . . . set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient").

shows that the fair market value of the Property at the time of the sale was not more than $720,000.

Defendants next argue that Plaintiff has failed to support its calculations of the principal amount owing, interest, and late charges.  In support of its request for these damages, Plaintiff has provided the Declaration of Paul Lathrop providing those numbers.  Mr. Lathrop is a vice president at Wells Fargo and has been responsible for overseeing the collection of the loans at issue.  Mr. Lathrop has provided a chart stating the total amount owed on the Note, breaking that amount down into several subcategories.  Defendants complain that Mr. Lathrop has not provided information as to how those amounts were calculated, but they do not actually challenge the numbers provided.  Moreover, the Note provides the necessary information on how the principal amount, the interest rate, and the late charges are calculated.  Thus, the Court disagrees that Mr. Lathrop's Declaration is lacking.  Certainly Plaintiff could have provided more detailed information to support Mr. Lathrop's Declaration.  But, given Mr. Lathrop's position with Wells Fargo and his experience with the loans at issue, the Court finds that his statements are sufficient to satisfy Plaintiff's burden on summary judgment.  The burden then shifts to Defendants to present some evidence to demonstrate a genuine dispute of material fact.  This they have not done.  If Defendants believed they needed additional information to rebut Mr. Lathrop's statements, they could have filed a motion under Federal Rule of Civil Procedure 56(d).  They did not.

Defendants next argue that Plaintiff has failed to provide supporting documentation for the appraisal costs, environmental reports, and title report costs.  Again, however, these amounts

are supported by the Declaration of Paul Lathrop and Defendants have not adequately challenged them.

Defendants further argue that the amount of attorneys' fees and costs is not supported. In response to this argument, Plaintiff has provided the Declaration of Sherilyn A. Olsen. Ms. Olsen's Declaration details the fees and costs expended by Plaintiff. "Where attorney's fees are provided by contract, a trial court does not possess the same degree of equitable discretion to deny such fees as it has when applying a statute providing for a discretionary award."[14] Nevertheless, a court may reduce the contractual attorney's fees claimed if the court finds such award "would be inequitable or unreasonable."[15] Having carefully reviewed Plaintiff's submission, the Court finds no basis to reduce the attorney's fees and costs requested by Plaintiff. The Court, however, will require Plaintiff to update its request when it submits a form of judgment for the Court's signature.

Defendants next challenge Plaintiff's request for property taxes. First, Defendants argue that Plaintiff did not seek recovery for property taxes in its Complaint. Defendants are correct that Plaintiff did not specifically reference property taxes in its Complaint, as it did with other types of damages. However, Plaintiff did request "an order affording any other relief the Court finds just."[16] Second, Defendants argue that Plaintiff has failed to establish any contractual or statutory basis supporting its claim that Defendants are obligated to pay Plaintiff the amount of the property taxes. However, the Deed of Trust provides that should Defendants fail to comply

---

[14] *U.S. for Use of C.J. C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1549 (10th Cir. 1987) (quotation omitted).

[15] *Id.* at 1548.

[16] Docket No. 2, at 9.

with their obligations under the Deed of Trust or related documents, Plaintiff may pay all taxes levied on the property and such expenditures become part of the indebtedness.[17] Thus, there is a sufficient basis for the Court to award those amounts expended by Plaintiff in paying property taxes.

Finally, Defendants argue that Plaintiff has failed to offset the damages amount by $7,000, which Plaintiff claims as an excess proceed received from the foreclosure sale of a property in Cedar City, Utah. Defendants provide no evidence to support their claim that either there was an excess proceed or that it should be applied to the indebtedness related to the Note. Should Defendants believe that they are entitled to some excess proceed from the foreclosure sale of the Cedar City property, they can pursue an appropriate action, but this does not justify the denial of summary judgment here. For these reasons, the Court will award Plaintiff the full amount of damages requested under the Note.

B.   DAMAGES UNDER THE CREDIT CARD AGREEMENT

Plaintiff seeks damages on the Credit Card in the amount of $22,151.42, plus interest and attorneys' fees and costs. Defendants argue that Plaintiff has failed to support is calculation of amounts owed on the credit cards and that Defendants dispute the amounts owed.

As with Plaintiff's other damages, the calculation of the amount owed under the credit card agreement comes from the Declaration of Paul Lathrop. In Mr. Lathrop's Declaration, he states that, as of October 13, 2013, the amount owed is $22,151.42.

Defendants do not actually dispute this amount. Rather, Mrs. Carter states that she has "no access to nor basis for determining whether the amounts set forth in the Credit Card Chart

---

[17] Docket No. 21 Ex. B, at 3.

are accurate and therefore I cannot agree that they are correct."[18] This is not sufficient to withstand summary judgment. Plaintiff has provided evidence showing that it is entitled to judgment on this claim by providing the Declaration of Mr. Lathrop. Having done this, the burden shifts to Defendants to present some evidence to establish that there is a genuine issue of material fact as to the amount owed. The statement from Mrs. Carter does not satisfy this burden. As stated above, Defendants could have filed a motion under Federal Rule of Evidence 56(d) if they believed further evidence was needed to respond, but they did not. Therefore, Plaintiff is entitled to summary judgment on this claim.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 20) is GRANTED. Plaintiff is directed to provide the Court with a form of judgment by January 4, 2016.

DATED this 16th day of December, 2015.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[18] Docket No. 23, Decl. of Marjorie Carter, ¶ 10.